# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2250

_____

| | | |
|---|---|---|
| Brandie McLean, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| Rhonda Stone, Rhonda Stone as Next | * | |
| Friend of Minors ZPW(I), ZPW(II), | * | |
| CZW and KSW, Minors; ZPW(I), by | * | |
| Next Friend Rhonda Stone; ZPW(II), | * | |
| by Next Friend Rhonda Stone; CZW, | * | |
| by Next Friend Rhonda Stone; KCW, | * | |
| by Next Friend Rhonda Stone, | * | |
| | * | Appeal from the United States |
| Plaintiffs | * | District Court for the |
| | * | Western District of Missouri. |
| v. | * | |
| | * | |
| Mark Gordon; Treva Gordon; Ethan | * | |
| Gordon, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| John McGinnis; Mickey Morgan; | * | |
| Missouri Department of Social | * | |
| Services, Children's Division, | * | |
| | * | |
| Defendants-Appellants. | * | |

_____

Submitted: February 13, 2008
Filed: December 1, 2008

_____

Before MELLOY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

John McGinnis, Mickey Morgan, and the Missouri Department of Social Services (DSS) appeal the district court's denial of their motion for summary judgment. We reverse the denial and remand this matter to the district court.

I.

The facts of this case are tragic. On June 2, 2005, Braxton Wooden, Jr. died as a result of an accidental shooting. At the time of the shooting, Braxton was a foster child in the custody of DSS and placed with DSS-approved foster parents, Mark and Treva Gordon. On that June day, Treva Gordon left Braxton, then eight years old, and her biological son Ethan, then 14, alone in the home while she attended to a work-related errand. Ethan retrieved a .38 caliber handgun that his father had hidden beneath clothing on a shelf at the back of the parents' closet. While playing "cops and robbers," Ethan pulled the trigger and a .38 caliber round struck Braxton in the head. Ethan was not aware that the gun was loaded. Braxton died in route to a hospital in Kansas City.

Brandie McLean, Braxton's biological mother, brought this suit against, among others, DSS social worker Mickey Morgan, Morgan's supervisor John McGinnis, and DSS, pursuant to 42 U.S.C. § 1983 and Missouri's Wrongful Death Statute, Mo. Rev. Stat. § 537.080. According to the allegations in McLean's complaint, Morgan, McGinnis, and DSS "acted negligently, recklessly and with gross negligence" in failing to properly evaluate and supervise the Gordons, including ensuring that adequate supervision was available and that there were no weapons accessible to children in the home. McLean also alleged that these defendants, in violation of

section 1983, acted "in a gross and negligent manner, and with deliberate indifference" in failing to follow internal policies and practices designed to protect foster children.

Morgan, McGinnis, and DSS filed a motion for summary judgment. Morgan and McGinnis asserted that they were shielded from suit under the doctrines of qualified and official immunity. DSS claimed that it was protected from liability by sovereign immunity. The district court granted in part and denied in part the summary judgment motion. The district court granted summary judgment to DSS on McLean's state-law wrongful death claim. This grant of summary judgment to DSS is not before us. The district court denied qualified immunity to Morgan and McGinnis on the section 1983 claim and official immunity on the state-law wrongful death claim. The court also denied summary judgment to DSS on the section 1983 claim, holding that the state had waived Eleventh Amendment immunity when it removed the action from state to federal court. This interlocutory appeal challenging the denials followed.

II.

On appeal, the defendants argue that the district court erred in holding that (1) Morgan and McGinnis were not entitled to qualified immunity on the section 1983 claim, (2) Morgan and McGinnis were not entitled to official immunity on the wrongful death claim, and (3) DSS was not entitled to sovereign immunity under section 1983. We review the district court's denial of summary judgment de novo. Brown v. Fortner, 518 F.3d 552, 558 (8th Cir. 2008). We consider the evidence in the light most favorable to McLean, making all reasonable inferences in her favor. Id. Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

-3-

A.

In considering a motion for summary judgment on qualified immunity grounds, the court makes two inquiries. First, the court asks "whether the facts alleged, taken in the light most favorable to [McLean], show that [Morgan and McGinnis's] conduct violated a constitutional right." Flowers v. City of Minneapolis, 478 F.3d 869, 872 (8th Cir. 2007); see Saucier v. Katz, 533 U.S. 194, 201 (2001). "If so, then [the court] determine[s] whether the constitutional right was clearly established at the time." Flowers, 478 F.3d at 872.

"To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the 'contemporary conscience.'" Id. at 873 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). Conscience-shocking behavior is "egregious" or "outrageous" behavior. Lewis, 523 U.S. at 847 n.8. "Mere negligence is not conscience-shocking and cannot support a claim alleging a violation of a plaintiff's substantive due process rights." Avalos v. City of Glenwood, 382 F.3d 792, 799 (8th Cir. 2004).

The district court, in denying Morgan and McGinnis qualified immunity, held that genuine issues of fact remained regarding "whether Morgan and McGinnis committed acts or omissions that rise above mere negligence and reach the level of 'shocking the conscience.'" Specifically, the district court noted that "neither Morgan nor McGinnis ever inquired about whether the Gordons' numerous guns were unloaded and secured, despite the fact that the existence of these guns at the Gordons' home was well documented."

The actions of Morgan and McGinnis in repeatedly failing to check the Gordons' home for unsecured firearms was not conscious-shocking. Even though

-4-

there was documentation that firearms were in the home, there was no evidence available to either Morgan or McGinnis prior to the incident that any firearm was unsecured or accessible to the children in the home. While failing to inquire about the location of the firearms might rise to the level of negligence, it does not approach the much higher standard of conscience-shocking conduct that is required to maintain this action. See James ex rel. James v. Friend, 458 F.3d 726, 728-30 (8th Cir. 2006) (holding that social workers' decision to accept foster parents' explanations for bruising and return the child to the home, where the child later was subjected to physical abuse that resulted in his death, was not conscience-shocking behavior); Burton v. Richmond, 370 F.3d 723, 729 (8th Cir. 2004) (determining that social workers' "failure to respond to two reports of sexual abuse and . . . failure to conduct a background check" of the children's relatives prior to placement was "not so outrageous or egregious as to shock the conscience and thus the failure to investigate did not violate [the children's] substantive due process rights"). Thus, the district court erred in denying the protections of qualified immunity to Morgan and McGinnis on the section 1983 claim.

B.

In denying Morgan and McGinnis's claim to official immunity on the state-law wrongful death claim, the district court found "that numerous of Morgan's and McGinnis' actions did not involve any degree of discretion, but instead involved simply following DSS policy with regard to ensuring the safety of foster children" and that "numerous factual disputes regarding what DSS policy required of DSS employees with respect to the safety of foster children, and what degree of discretion DSS employees were afforded in implementing the applicable policy" remained.

"Under Missouri law, the doctrine of official immunity protects public officials from civil liability for injuries arising out of their discretionary acts or omissions performed in the exercise of their official duties. Official immunity does not,

however, shield officials for liability arising from their negligent performance of ministerial acts or functions." James ex rel. James, 458 F.3d at 731 (citations omitted). The Missouri Supreme Court has explained "[a] ministerial function is one which a public officer is required to perform 'upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [an employee's] own judgment or opinion concerning the propriety of the act to be performed.'" Charron v. Thompson, 939 S.W.2d 885, 886 (Mo. 1996) (en banc) (quoting Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. 1984) (en banc)). Whether a state official's action "is discretionary or ministerial is a case by case determination to be made after weighing 'such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment.'" Id. (quoting Kanagawa v. State ex rel. Freeman, 685 S.W.2d 831, 836 (Mo. 1985) (en banc)).

The district court did not specify what actions or inactions it believed that Morgan and McGinnis took that were ministerial and non-discretionary and subject only to the "implement[ation] [of] clearly defined DSS procedures and policies with regard to the safety of foster children." Appellee argues that the ministerial duties pertained to the completion of the CS-45 form ("Kinship Home and Safety Checklist") and to the general requirement found in the Code of State Regulations that foster homes be free from weapons that are accessible to children. See Mo. Code Regs. Ann. tit. 13, § 40-60.040 (rescinded January 30, 2007).

First, Appellee presents no policy imposing a duty on Morgan or McGinnish, or any state official, to complete the CS-45 form at any time after the Gordons were initially approved to serve as foster parents. Another social worker had completed the CS-45 form for the Gordons in August 2003. At that time, the Gordons reported that any weapons were stored in a manner so as to be inaccessible to children. Second, the Code of State Regulations requirement that the foster home be free from weapons that are accessible to children does not prescribe how that directive is to be met; therefore,

much discretion is left to the state actors to implement it. The district court erred in denying Morgan and McGinnis's motion for summary judgment on the official immunity basis. In response to the motion for summary judgment, McLean failed to present facts that create a genuine issue that Morgan or McGinnis negligently performed or failed to perform any ministerial duty. Further, Morgan and McGinnis's responsibilities to insure that the Gordons' home was safe were discretionary as a matter of law. Accordingly, official immunity protects Morgan and McGinnis from liability under Missouri's Wrongful Death Statute.

C.

McLean's action was originally filed in state court, and the defendants, including DSS, voluntarily removed it to federal court. The district court held that this voluntary removal resulted in DSS's waiver of Eleventh Amendment immunity. DSS maintains that even if it did waive Eleventh Amendment immunity, the district court failed to consider its claim of sovereign immunity. Alternatively, DSS argues that the State is not a person for purposes of section 1983 litigation, and therefore DSS may not be sued under section 1983.

We need not address the question of whether the State waived its Eleventh Amendment immunity by voluntarily removing this matter to federal court. Section 1983 provides for an action against a "person" for a violation, under color of law, of another's civil rights. As the Supreme Court reminded us, "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." Lapides v. Bd. of Regents, 535 U.S. 613, 617 (2002); Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); see Howlett v. Rose, 496 U.S. 356, 365 (1990) ("Will establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court."). Thus, the district court erred in failing to grant

summary judgment for DSS, an agency or "arm[] of the State," on the section 1983 claim brought by McLean.

## III.

Accordingly, we reverse the denial of summary judgment for Morgan and McGinnis on the section 1983 claim and the state wrongful death claim. We further reverse the denial of summary judgment for DSS on the section 1983 claim. We remand this matter to the district court with instructions to enter summary judgment in accordance with this opinion.

_____