# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-1409

_____

|  |  |
|---|---|
| James Dean Van Wyhe, | * |
|  | * |
|  | * |
| Appellee, | * |
|  | * |
|  | * |
| v. | * |
|  | * |
|  | * |
| Tim Reisch; Douglas Weber; | * |
| Jennifer Wagner, | * |
|  | * |
| Appellants. | * |

_____

No. 08-1413

_____

Appeals from the United States
District Court for the
District of South Dakota.

|  |  |  |
|---|---|---|
| Charles E. Sisney, | * | |
|  | * | |
| Appellee, | * | |
|  | * | |
| v. | * | [PUBLISHED] |
|  | * | |
| Tim Reisch, in both his individual | * | |
| and official capacities as Secretary | * | |
| of Corrections for South Dakota; | * | |
| Douglas L. Weber, in both his | * | |
| individual and official capacities as | * | |
| Chief Warden for the Department | * | |
| of Corrections of South Dakota; | * | |

Dennis Block, in both his individual and official capacities as Associate Warden for the South Dakota State Penitentiary; Jennifer Wagner, in both her individual and official capacities as Cultural Activities Coordinator for the South Dakota State Penitentiary, also known as Jennifer Lane; Daryl Slykhuis, Interim Warden of the South Dakota State Penitentiary, in his individual and official capacity,

    Appellants.
_____

United States of America,

   Intervenor below - Appellee.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

_____

Submitted: November 13, 2008
Filed: September 10, 2009
_____

Before MURPHY, HANSEN, and RILEY, Circuit Judges.
_____

HANSEN, Circuit Judge.

James Dean Van Wyhe and Charles E. Sisney, prisoners at the South Dakota State Penitentiary ("SDSP"), each brought a suit against South Dakota prison officials, asserting various claims of interference with their free exercise of religion under the First Amendment and Section 3 of the Religious Land Use and Institutionalized

Persons Act of 2000 (RLUIPA), 114 Stat. 804, 42 U.S.C. § 2000cc-1(a)(1)-(2). Sisney added two claims of retaliation. The prison officials bring this interlocutory appeal of the district court's summary judgment rulings. See Van Wyhe v. Reisch, 536 F. Supp. 2d 1110 (D.S.D. 2008); Sisney v. Reisch, 533 F. Supp. 2d 952 (D.S.D. 2008). They challenge the constitutionality of RLUIPA, the district court's conclusion that the state waived its Eleventh Amendment sovereign immunity from suit for monetary damages, the denial of summary judgment on the RLUIPA and First Amendment claims, and the denial of qualified immunity and summary judgment on the retaliation claims. The United States intervenes in this appeal for the purpose of arguing that RLUIPA is constitutional. We affirm in part, reverse in part, and dismiss some claims for lack of interlocutory jurisdiction.

I.

A. Sisney's Claims

Sisney, a SDSP inmate who practices the Jewish faith, brought suit pursuant to 42 U.S.C. § 1983 and RLUIPA for the violation of his free exercise of religion rights, naming as defendants Tim Reisch, Secretary of the South Dakota Department of Corrections ("DOC"); Douglas Weber, Chief Warden for the DOC; Dennis Block, Associate Warden for the SDSP; Jennifer Wagner, Cultural Activities Coordinator for the SDSP; Doug Loen, Policy Analyst for the SDSP; Daryl Slykhuis, Interim Warden of the SDSP; and others (collectively, "the prison officials"). Sisney claimed that the prison officials violated his right to the free exercise of religion under RLUIPA and the First Amendment by denying (among other things not relevant to this appeal) his request to possess and use a succah, his request to have a tape player in his cell to study the Hebrew language, and his request for additional group religious and language study time.

Sisney asserted that his religion requires him to celebrate the week-long Jewish festival of Sukkot by eating meals outside in a succah and reciting a special

-3-

benediction before sundown. A succah is a three-sided booth or tent constructed of a tarp and metal poles. The succah is not a permanent structure, and it is large enough to accommodate only one person at a time. Sisney's project application suggested that if he is not allowed to eat meals in the succah, he could alternatively eat meals as normal, as long as he is provided extra time for the recitation of the special benediction, but he asserted that he included this suggested accommodation only because he had been told that his request for a succah would be denied. The group of Jewish prisoners at SDSP did not possess a succah, but Jewish inmates at South Dakota's low- to medium-security prison tried to donate one to the SDSP Jewish inmates. The prison officials denied Sisney's request for a succah on the grounds that prison policy prohibits inmate-to-inmate transfer of property and that the succah presents a safety and security concern. Instead, they permitted Sisney the extra time each evening during the festival to recite the benediction.

The prison officials denied Sisney's request for additional group meeting time to study the Torah, Kabbalah, and the Hebrew language. The Jewish group is permitted three hours of group meeting and service time per week in addition to group worship on special religious holidays. Prior to 2000, the group met for 90 minutes per week, but in response to Sisney's request for additional group time for Torah study and prayer, the time was increased to three hours. The prison officials stated that Sisney's new application did not explain why the group now needed yet more time for the same activities. Sisney is allowed to study on his own in his free time.

Additionally, the prison officials denied Sisney's request to have a tape player in his cell to aid in his study of the Hebrew language. Sisney does not currently have access to any Hebrew language tapes but claims that he needs the tape player because the group meeting times provided are insufficient to facilitate his language studies. The prison does not allow any inmate to have a tape player in a cell because it is a safety and security concern. Sisney has access to a tape player during the weekly group meeting times, and he may practice Hebrew in his cell without the tape player.

-4-

Sisney also claimed that, in retaliation for filing this suit, Interim Warden Slykhuis denied immediate delivery to Sisney of The Jailhouse Lawyer's Handbook, a publication that arrived as unsolicited mail from the Center for Constitutional Rights. Sisney claimed that Warden Slykhuis knew of this lawsuit and refused to immediately deliver the handbook without asking Sisney if he had ordered it. Sisney asserted that the same handbook was immediately delivered to other inmates, that prison policy did not require the immediate rejection of the entire correspondence, and that he later received the handbook. Warden Slykhuis asserted that he acted reasonably pursuant to a prison operational memorandum.

Sisney claimed that Cultural Activities Coordinator Wagner retaliated against him by engaging in a pattern of religious discrimination and harassment and by interfering with his relationship with the Aleph Institute, an organization that was providing him materials helpful to the practice of his religion. According to Sisney, Wagner had inquired as to why the Aleph Institute was assisting Sisney, who was not born of a Jewish mother, and that this inquiry caused the Aleph Institute to stop sending him materials. Wagner said she repeatedly contacted the Aleph Institute asking for free educational materials, food, and other items for Sisney and the other members of the Jewish group, but Aleph has refused to aid Sisney because it does not deem him to be Jewish under Jewish law.

In a lengthy opinion, the district court concluded that RLUIPA is constitutional under the Spending Clause and permits only official-capacity suits. The district court concluded that the state had waived its Eleventh Amendment sovereign immunity from suit for monetary damages by accepting federal funds under the terms of RLUIPA and the Civil Rights Remedies Equalization Act of 1986 (CRREA), 42 U.S.C. § 2000d-7, and therefore, the court denied sovereign immunity from monetary damages on the official-capacity RLUIPA claims. But, the district court noted that any monetary relief necessarily would be limited to nominal damages as required by the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(e). Injunctive relief was also held to

be available on the RLUIPA and the First Amendment official-capacity claims. On the merits of those claims, the district court granted summary judgment on some claims and denied summary judgment on others. Specifically, the court held that Sisney had demonstrated a substantial burden on his free exercise rights regarding the denial of a succah, the denial of additional group religious study time, and the denial of a tape player, but the court concluded that material questions of fact remained on whether Sisney's beliefs were sincere and whether the denial of these requests was the least restrictive means of furthering the state's compelling interests.

As to the § 1983 First Amendment claims against prison officials in their individual capacities, the district court granted qualified immunity. On the retaliation claims, the district court denied summary judgment, finding material questions of fact existing on the issue of the intent to retaliate.

## B. Van Wyhe's Claims

Van Wyhe is also an inmate at the SDSP. In relevant part, he brought suit against several South Dakota prison officials claiming that they violated his free exercise of religion rights under RLUIPA and the First Amendment by implementing a prison policy, SDDOC Policy 1.5.F.2, which was in effect when his suit was filed. Pursuant to this policy, prison officials deprived Van Wyhe of kosher meals for a period of time as a sanction for violating the prison rules governing religious diets. Effective February 14, 2007, this policy was changed, eliminating the sanction of removal from the religious diet program for a prison rules violation. Van Wyhe is currently receiving a kosher diet. He sought monetary, injunctive, and declaratory relief based upon the policy as it existed prior to February 14, 2007, but he did not challenge the amended policy.

In ruling on the prison officials' motion for summary judgment, the district court relied on the legal conclusions made in Sisney's case regarding sovereign immunity,

the availability of monetary damages under RLUIPA as limited by the PLRA, and the constitutionality of RLUIPA. Because the policy changed as of February 14, 2007, the district court concluded that Van Wyhe was not entitled to injunctive or declaratory relief regarding the original version of the policy but permitted the official-capacity RLUIPA claim for monetary damages to proceed against the officials involved in enforcing the original policy–Secretary Reisch, Warden Weber, and Cultural Activities Coordinator Wagner. The district court granted qualified immunity on the § 1983 First Amendment individual capacity claims.

In these consolidated interlocutory appeals, the prison officials appeal the district court's denials of summary judgment. We are also called upon to consider the constitutionality of RLUIPA, as well as the availability of monetary damages against the state government under RLUIPA.

## II.
### A. Jurisdiction

Ordinarily, we lack jurisdiction over an interlocutory appeal challenging the denial of summary judgment, but an immediate appeal is appropriate where summary judgment is denied on the grounds of sovereign immunity or qualified immunity, because immunity "'is effectively lost if a case is erroneously permitted to go to trial.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)); see also Monroe v. Ark. State Univ., 495 F.3d 591, 593-94 (8th Cir. 2007). However, immediate appeal is appropriate only "'to the extent that it turns on an issue of law.'" Powell v. Johnson, 405 F.3d 652, 654 (8th Cir. 2005) (quoting Mitchell, 472 U.S. at 530). Our limited ability to reach the merits of the underlying dispute extends only to legal issues that are "inextricably intertwined" with the district court's denial of immunity, Swint v. Chambers County Comm'n, 514 U.S. 35, 51 (1995), and not to claims where the denial of summary judgment was based on disputes over the sufficiency of the evidence, that is, "which facts a party may, or may not, be

able to prove at trial," Johnson v. Jones, 515 U.S. 304, 313 (1995). The district court's determination that the summary judgment record raises a genuine issue of fact as to a government official's involvement in the alleged constitutional violation is not a final decision subject to immediate appeal. Id.

We conclude that we have jurisdiction to consider the legal issues of whether Section 3 of RLUIPA is constitutional under Congress's Spending Clause authority and whether the state waived its Eleventh Amendment immunity from monetary damages by accepting federal funds under RLUIPA, because the issues are intertwined with the district court's denial of sovereign immunity. We have jurisdiction to consider the merits of the RLUIPA and First Amendment claims regarding the succah, the tape player, the additional group time, and the retaliation claims only to the extent that they turn on issues of law, which we will address separately below.

We apply *de novo* review to the district court's denial of summary judgment on the grounds of sovereign and qualified immunity, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving parties. McLean v. Gordon, 548 F.3d 613, 616 (8th Cir. 2008). We take as true those facts asserted by Sisney and Van Wyhe "that are properly supported by the record." Monroe, 495 F.3d at 594. "Summary judgment is appropriate where 'there is no genuine issue as to any material fact and . . . the movant[s are] entitled to judgment as a matter of law.'" McLean, 548 F.3d at 616 (quoting Fed. R. Civ. P. 56(c) (ellipsis in original)).

## B. RLUIPA

We begin with the language of the statute, which provides prison inmates the following protection:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a) (1)-(2) ("Section 3"). Section 3 of RLUIPA protects inmate religious exercise[1] in this manner "when the substantial burden is imposed in a program or activity[2] that receives Federal financial assistance." Id. § 2000cc-1(b)(1).[3] RLUIPA defines the term "religious exercise" as "including the exercise of religion, whether or not compelled by, or central to, a system of religious belief." Id. § 2000cc-5(7)(A).

RLUIPA explicitly provides for a cause of action to enforce the heightened free exercise right it creates. Id. § 2000cc-2(a)-(g) ("Section 4") (stating a person may assert a RLUIPA violation as "a claim or defense in a judicial proceeding and obtain appropriate relief against a government"). In such a suit, if the institutionalized person "produces prima facie evidence to support a claim," by showing that the government practice substantially burdens the person's exercise of religion, then the government bears the burden of persuasion on every other element of the claim. Id. § 2000cc-2(b).

---

[1] RLUIPA also contains a separate protection of land use as religious exercise in Section 2, but that provision is not implicated by this appeal.

[2] The parties do not dispute that RLUIPA applies to South Dakota's prisons.

[3] The statute also purports to apply to a substantial burden that affects commerce, id. § 2000cc-1(b)(2), but because the undisputed facts of this case do not affect commerce, this appeal reaches only RLUIPA's federal funding underpinnings.

## 1. Constitutionality of RLUIPA

The prison officials challenge the district court's conclusion that Section 3 of RLUIPA is a constitutional exercise of Congress's Spending Clause authority. For the reasons that follow, consistent with the reasons set forth by every other circuit court of appeals to address the question, we conclude that Section 3 of RLUIPA is a constitutional exercise of legislative authority under the Spending Clause. See Madison v. Virginia, 474 F.3d 118, 124 (4th Cir. 2006); Cutter v. Wilkinson, 423 F.3d 579, 584-90 (6th Cir. 2005); Benning v. Georgia, 391 F.3d 1299, 1305-08 (11th Cir. 2004); Charles v. Verhagen, 348 F.3d 601, 606-11 (7th Cir. 2003); Mayweathers v. Newland, 314 F.3d 1062, 1066-70 (9th Cir. 2002), cert. denied, 540 U.S. 815 (2003); see also Sossamon v. Texas, 560 F.3d 316, 328-29 (5th Cir. 2009) (concluding that RLUIPA "was passed pursuant to the Spending Clause"); Smith v. Allen, 502 F.3d 1255, 1270, 1274 n.9 (11th Cir. 2007) (agreeing that RLUIPA "hinges on Congress' Spending Power"). We adopt the reasoning set forth in those cases with little to add, addressing only the specific arguments raised by the prison officials.

Under the Spending Clause, Congress has the power, among other things, to provide for the "general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. This provides Congress with incidental authority to "attach conditions on the receipt of federal funds, and [Congress] has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal money[] upon compliance by the recipient with federal statutory and administrative directives." South Dakota v. Dole, 483 U.S. 203, 206 (1987) (internal marks omitted). Thus, consistent with the Spending Clause, Congress may use conditional grants of federal funds to achieve objectives that are not within the scope of Article I, id., such as requiring a state to waive its "sovereign immunity as a condition for receiving federal funds, even though Congress could not order the waiver directly," Jim C. v. United States, 235 F.3d 1079, 1081 (8th Cir. 2000) (en banc), cert. denied, 533 U.S. 949 (2001).

Determining whether legislation is a permissible use of Congress's spending power requires a consideration of several limiting factors as set forth by the Supreme Court in Dole: (1) the legislation must be in pursuit of the general welfare, (2) conditions on the state's receipt of federal funds must be set out unambiguously so that the state's participation is the result of a knowing and informed choice, (3) conditions on federal funds must be related to the federal interest in particular national projects or programs, (4) conditions must not be prohibited by other constitutional provisions, and finally, (5) the circumstances must not be so coercive that "pressure turns into compulsion." 483 U.S. at 207-11 (internal marks omitted). Under the terms of RLUIPA, a state prison that receives federal funding does so on two conditions: (1) that the prison officials not impose a substantial burden on an inmate's religious exercise unless that burden is justified by a compelling government interest and is the least restrictive means of furthering that compelling interest, 42 U.S.C. § 2000cc-1(a); and (2) that the state must submit to judicial proceedings for "appropriate relief" to enforce RLUIPA, id. § 2000cc-2(a).

The first Dole factor, which requires that the legislation must be in pursuit of the general welfare, is satisfied by RLUIPA's protection of an inmate's religious exercise. The state prison officials argue that RLUIPA interferes with prison administration and improperly encroaches on a purely local concern–the operation of state correctional facilities. We respectfully disagree. As a general matter, "the concept of welfare or the opposite is shaped by Congress" in the first instance. Dole, 483 U.S. at 208 (internal marks omitted). Congress has determined that encouraging greater protection of religious worship within prisons promotes the general welfare, and we find it to be beyond serious dispute that this protection furthers society's larger goal of rehabilitating inmates as well as simply respecting individual religious worship. Purely local matters of prison administration are not jeopardized because RLUIPA permits even substantial burdens on religious exercise to be imposed when the state uses the least restrictive means of pursuing its compelling government interests. RLUIPA allows courts to give "due deference" to the expertise of prison officials in achieving

-11-

the compelling government interests involved in prison operations, and "Congress did not intend to overly burden prison operations" but to provide heightened religious protection "without undermining the security, discipline, and order of those institutions." Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 987-88 (8th Cir.), cert. denied, 543 U.S. 991 (2004). RLUIPA respects the compelling local concerns while enhancing the general welfare.

Second, the statutory language of RLUIPA is sufficiently clear to satisfy Dole's second factor–that the conditions on the receipt of federal funds be set forth unambiguously. Section 3 and Section 4 of RLUIPA together plainly condition the state's receipt of federal funds on the requirement that the state provide RLUIPA's heightened religious protection to inmates and that the state submit to a cause of action to enforce that right. The prison officials argue that RLUIPA does not clearly indicate that by accepting federal funding for prisons, the state is required to provide an inmate with kosher meals or a succah, but this level of specificity is not required. RLUIPA provides a pliable standard, permitting prison officials the freedom to make judgment calls by granting the states "wide latitude in applying its provisions, but this flexibility does not make the conditions of RLUIPA opaque." Benning, 391 F.3d at 1306. The circuit courts of appeals agree that setting forth every conceivable variation in the statute is neither feasible nor required and that RLUIPA appropriately provides the state "the freedom to tailor compliance according to its particular penological interests and circumstances." Charles, 348 F.3d at 608 (relying on Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 24-25 (1981)). See also Benning, 391 F.3d at 1306; Mayweathers, 314 F.3d at 1067. As always, the devil is in the details, but Congress has deemed the prison officials to be best suited to deal with those details on a case-by-case basis in their ordinary prison operations. We conclude that RLUIPA sets forth the general right to heightened protection of religious exercise with sufficient clarity, and unambiguously conditions the state's acceptance of federal funding on its agreement to enforce that protection.

The third <u>Dole</u> factor is satisfied because the condition on which the state receives the federal funding, that is, protecting inmates' religious exercise against substantial burdens that are not justified by compelling state interests, is reasonably related to the funding of prison programs. <u>See</u> <u>Cutter</u>, 423 F.3d at 586 (stating <u>Dole</u> "suggests that a condition on federal funding is constitutional so long as it is reasonably calculated to address the federal interest" (internal marks omitted)). "Both the protection of the religious exercise of prisoners and their rehabilitation are rational goals of Congress, and those goals are related to the use of federal funds for state prisons." <u>Benning</u>, 391 F.3d at 1308. The prison officials' assertion otherwise is simply without merit.

The fourth <u>Dole</u> factor requires a consideration of whether other constitutional provisions prohibit these particular conditions on federal funding. The prison officials argue that RLUIPA violates the doctrine of the separation of powers because the statute improperly overturns the more deferential constitutional standard set forth by the Supreme Court for evaluating prisoners' free exercise of religion claims, <u>see</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987) (holding that prison regulations must be reasonably related to legitimate penological interests to withstand a constitutional challenge), and improperly substitutes a standard of strict scrutiny. We disagree. RLUIPA does not attempt to change the standard of review for First Amendment claims, but it "'establishe[s] a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims.'" <u>See</u> <u>Gladson v. Iowa Dep't of Corr.</u>, 551 F.3d 825, 832 (8th Cir. 2009) (quoting <u>Murphy</u>, 372 F.3d at 987). Context remains important. The application of this statutory compelling interest standard "does not 'elevate accommodation of religious observances over an institution's need to maintain order and safety.'" <u>Fegans v. Norris</u>, 537 F.3d 897, 902 (8th Cir. 2008) (quoting <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 722 (2005)). Instead, RLUIPA appropriately views the constitutional standard as a floor, not a ceiling, and provides additional statutory protection for religious worship in a particular context. <u>See</u> <u>Mayweathers</u>, 314 F.3d at 1070 (stating the Court in <u>Employment Div. v. Smith</u>,

494 U.S. 872, 890 (1990), "explicitly left [the question of whether to provide] heightened legislative protection for religious worship to the political branches"). Congress's policy decision to provide this heightened protection is well within Congress's appropriate legislative role. "Nothing in the Spending Clause . . . forecloses Congress from placing conditions on federal funds that reach beyond what the Constitution requires." Madison, 474 F.3d at 127.

Finally, the state prison officials assert that the amount of federal funding provided to the state prison renders the statutory conditions unconstitutionally coercive. We agree with the district court's conclusion that, although the federal funding amount involved here is not insubstantial, it does not render the statute unconstitutionally coercive in light of our prior case law. In Jim C., we rejected a Spending Clause challenge in which the state argued that Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 974, was unconstitutionally coercive. 235 F.3d at 1082. We concluded that the state's potential loss of $250 million dollars in federal funding, which amounted to 100% of the state's federal education funding and approximately 12% of the state's annual education budget, "would be politically painful" but was not impermissibly coercive. Id. We found no reason to deviate from that authority in Doe v. Nebraska, involving a challenge to the state's waiver of immunity under Section 504 of the Rehabilitation Act. 345 F.3d 593, 599 (8th Cir. 2003). Relying on Jim C., we held that there was no coercion, even though the state would potentially lose approximately $557 million per year and the federal funding totaled 60% of the state agency's operating budget. Id.

Here, South Dakota received over $64 million from federal funding over the period from 2001 through 2006, amounting to between 9.5% and 17.35% of the DOC's annual budget during those years. Our prior cases lead us to conclude that this is not so great an amount as to render the statute unduly coercive. While a potential loss of 100% of the federal funding for state prisons would indeed be painful, the statute is intended as an inducement, and the final choice is left to each state. "[H]ard choices

-14-

do not alone amount to coercion." Madison, 474 F.3d at 128. "'If a State's citizens view federal policy as sufficiently contrary to local interests, they may elect to decline a federal grant.'" Jim C., 235 F.3d at 1082 (quoting New York v. United States, 505 U.S. 144, 168 (1992)). We conclude that "the Spending Clause allows Congress to present States with this sort of choice," id., and that RLUIPA is not unduly coercive.

We therefore affirm the district court's conclusion that RLUIPA is constitutional under the Spending Clause. Because of this conclusion and the fact that this case presents no facts implicating any connection to commerce, we decline to address the state prison officials' arguments regarding the constitutionality of RLUIPA under the Commerce Clause.

### 2. Eleventh Amendment Immunity under RLUIPA

The prison officials challenge the district court's conclusion that RLUIPA, coupled with the explicit language of CRREA, permits monetary damage claims against the state subject to the limitations imposed by the PLRA. Our conclusion above that RLUIPA is sufficiently clear to be a valid exercise of Spending Clause power does not foreclose our consideration of whether RLUIPA is sufficiently clear to effectuate a knowing waiver of the state's Eleventh Amendment sovereign immunity from a suit for monetary damages.[4] See Sossamon, 560 F.3d at 330-331 (considering

---

[4]The Supreme Court has recognized two circumstances in which an individual may bring suit in federal court against a state. First, Congress may abrogate a state's sovereign immunity through legislation enacted pursuant to its Section 5 enforcement power of the Fourteenth Amendment, which was "enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). "Second, a State may waive its sovereign immunity by consenting to suit." Id. (emphasis supplied.) RLUIPA, as an exercise of Congress's Spending Clause power, "is therefore not an attempt by Congress to *abrogate* [the state's] sovereign immunity,

the issue of sovereign immunity separately from the <u>Dole</u> factors); <u>Madison</u>, 474 F.3d at 129 (same).

There can be no constructive waiver of sovereign immunity, and we "indulge every reasonable presumption against waiver." <u>Coll. Sav. Bank</u>, 527 U.S. at 682 (internal marks omitted). The Supreme Court, construing the federal government's waiver of sovereign immunity, has stated that "[t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996) (citing <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30, 34 (1992)). Additionally, waivers are to be "construed strictly in favor of the sovereign and not enlarged beyond what the language requires." <u>See</u> <u>Nordic Village, Inc.</u>, 503 U.S. at 34 (internal marks and citations omitted).

RLUIPA conditions the state's acceptance of federal funds, in part, on its consent to suit for "appropriate relief." 42 U.S.C. § 2000cc-2(a). As we concluded above, this phrase plainly creates a private cause of action against the state "for at least some form of relief." <u>Madison</u>, 474 F.3d at 130. The phrase, "appropriate relief," is broad enough to include both injunctive relief and compensatory damages, but the question is whether the language *unambiguously* extends to monetary claims. There is a split of circuit authority on this issue. In <u>Madison v. Virginia</u>, the Fourth Circuit held that in the sovereign immunity waiver context, the "appropriate relief" language "falls short of the unequivocal textual expression necessary to waive the State immunity from suits for damages." <u>Id.</u> <u>See also</u> <u>Sossamon</u>, 560 F.3d at 331 (holding "RLUIPA is clear enough to create a right for damages on the cause-of-action analysis, but not clear

---

but to goad [the state] to *waive* its sovereign immunity by accepting federal funds conditioned on accepting liability." <u>Sossamon</u>, 560 F.3d at 329. The two distinct methods should not be confused. One requires only action by the Congress; the other requires knowing action by the state.

enough to do so in a manner that abrogates state sovereign immunity from suits for monetary relief"); Cardinal v. Metrish, 564 F.3d 794, 801 (6th Cir. 2009) ("RLUIPA does not contain a clear indication that Congress unambiguously conditioned receipt of federal prison funds on a state's consent to suit for money damages."); Nelson v. Miller, 570 F.3d 868, 884 (7th Cir. 2009) (statutory reference to "'appropriate relief' . . . does not provide the 'unequivocal textual expression' necessary to effect" waiver of state sovereign immunity for money damages). Accord Webman v. Fed. Bureau of Prisons, 441 F.3d 1022, 1025-26 (D.C. Cir. 2006) (construing the identical language in RFRA as not conveying an unambiguous waiver of sovereign immunity from money damages).

In contrast, the Eleventh Circuit concluded in Smith v. Allen "that, absent an intent to the contrary, the phrase 'appropriate relief' in RLUIPA encompasses monetary as well as injunctive relief." 502 F.3d at 1271. In reaching this conclusion, the court relied on Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60 (1992), which articulates a presumption in favor of making *all* appropriate remedies available when Congress uses broad language in crafting remedies. See Smith, 502 F.3d at 1270. In Franklin, however, the Supreme Court was dealing with an implied cause of action for intentional discrimination and had no occasion to discuss whether any statutory language was specific enough to effectuate a knowing waiver of state sovereign immunity by its acceptance of the federal benefit. Franklin did not involve a question of state sovereign immunity. Cardinal, 564 F.3d at 800-801. In a case decided after Franklin, the Supreme Court itself rejected any idea that sovereign immunity could be waived by anything other than the "unequivocal expression of elimination of sovereign immunity . . . in statutory text." Lane, 518 U.S. at 192 (internal marks omitted). For these reasons, we decline to follow the analysis set forth by the Eleventh Circuit in Smith. We agree, instead, with the analysis of the Fourth, Fifth, Sixth, and Seventh Circuits that RLUIPA's "appropriate relief" language does not unambiguously encompass monetary damages so as to effect a waiver of sovereign immunity from suit for monetary claims under Section 3 by acceptance of the federal money. See, e.g.,

-17-

<u>Madison</u>, 474 F.3d at 131 (quoting <u>Lane</u>, 518 U.S. at 196, for the proposition that "Congress is, of course free to condition funds upon a waiver of 'sovereign immunity against liability without waiving [a State's] immunity from monetary damages awards'" (alteration in original)).

The district court reached this same conclusion but then reasoned that, although RLUIPA does not waive sovereign immunity from monetary damages, the waiver is nevertheless accomplished by the unambiguous language of CRREA. The prison officials argue that this conclusion is in error. CRREA explicitly provides that a state does not retain its Eleventh Amendment immunity with regard to the violation of certain named civil rights statutes (namely, the Rehabilitation Act, Title IX, the Age Discrimination Act, and Title VI of the Civil Rights Act), or "the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1). The district court concluded that, although RLUIPA is not listed specifically in CRREA, RLUIPA is within its catch-all phrase as a federal statute "prohibiting discrimination," <u>id.</u>, and thus, CRREA's explicit waiver of sovereign immunity applies equally to RLUIPA. We respectfully disagree with that analysis.

The institutionalized persons section of RLUIPA at issue in this suit (Section 3), does not unambiguously prohibit discrimination–it prohibits substantial burdens on religious exercise, without regard to discriminatory intent.[5] Congress understands how

_____

[5]The district court cited the Seventh Circuit's statement that "RLUIPA follows in the footsteps of a long-standing tradition of federal legislation that seeks to eradicate discrimination and is 'designed to guard against unfair bias and infringement on fundamental freedoms.'" <u>Charles</u>, 348 F.3d at 607 (quoting <u>Mayweathers</u>, 314 F.3d at 1067). Context demonstrates, however, that this statement was not made within a textual analysis of the scope of appropriate relief under RLUIPA but in the distinct and different discussion of whether RLUIPA is valid Spending Clause legislation in pursuit of the general welfare. As such, this statement is not authoritative in

-18-

to create a federal statute prohibiting discrimination, and it did so within RLUIPA's separate section (Section 2) dealing with land use regulations. Section 2 of RLUIPA prohibits "discrimination" against religious institutions "on the basis of religion" with regard to land use regulations and prohibits land use regulations that treat a religious institution "on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1), (2). Similar language, prohibiting discrimination or requiring equal treatment, is conspicuously omitted from the RLUIPA protections afforded to institutionalized persons under Section 3. It is appropriate to consider these sections independently of one another. See Cutter, 544 U.S. at 715 n.3 (declining to address the land use section of RLUIPA, and independently considering the constitutional validity of the institutionalized persons section under the Establishment Clause). The antidiscrimination statutes listed in CRREA all explicitly prohibit discrimination, and the institutionalized persons section of RLUIPA does not fit neatly within that genre. See Madison, 474 F.3d at 133. Absent an unequivocal textual indication that CRREA applies to Section 3 institutionalized-person-RLUIPA claims, we will not rely on CRREA to effectuate a knowing waiver of sovereign immunity from money damages on those claims.

Because the state did not waive its immunity from suit for monetary damages by accepting federal funds on the conditions set forth in the institutionalized persons section of RLUIPA (Section 3), we reverse the district court's denial of summary judgment to the prison officials in Van Wyhe's suit, and remand for entry of judgment in favor of Tim Reisch, Douglas Weber, and Jennifer Wagner on the RLUIPA official-capacity claims. Similarly, this conclusion requires the entry of summary judgment in favor of the prison officials on Sisney's official-capacity RLUIPA claims for money damages against Tim Reisch, Douglas Weber, Dennis Block, and Jennifer Wagner.

3. Surviving RLUIPA Claims

_____

 determining the scope of the state's waiver of immunity.

We next consider the surviving official-capacity RLUIPA claims.[6] No claims survive in Van Wyhe's suit. In Sisney's suit, three claims for injunctive relief survive–the denial of the succah, the denial of additional group religious study time, and the denial of a tape player in his cell. On each of these, the district court found questions of material fact existing on the issue of whether the prison officials had used the least restrictive means of achieving the compelling governmental interests. As already noted, our jurisdiction in this interlocutory appeal extends only to the extent the denial of summary judgment turns on an issue of law and not disputes of fact. To make out a prima facie RLUIPA claim against a state official, an inmate "must 'show, as a threshold matter, that there is a substantial burden on his ability to exercise his religion.'" Singson v. Norris, 553 F.3d 660, 662 (8th Cir. 2009) (quoting Murphy, 372 F.3d at 988). Absent this showing, the state retains its sovereign immunity. The district court did not identify any material questions of fact in dispute on this threshold issue. We therefore have interlocutory jurisdiction to consider this threshold legal issue on each claim, construing the facts in the light most favorable to Sisney. See Prescott v. Little Six, Inc., 387 F.3d 753, 755-56 (8th Cir. 2004) (noting we have "jurisdiction to decide closely related issues of law, i.e., claims that are inextricably intertwined with or necessary to ensure meaningful review of the sovereign immunity issue" (internal marks omitted)), cert. denied, 544 U.S. 1032 (2005).

RLUIPA "defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Cutter, 544 U.S. at 715 (quoting § 2000cc-5(7)(A)). We have held, largely consistent with our First Amendment cases, that to demonstrate a substantial burden on the exercise of

---

[6]The district court concluded that RLUIPA does not permit suit against state officials in their individual capacity because the Spending Clause authority by which RLUIPA was enacted will not support an action against an official in his or her individual capacity. See Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 610-11 (8th Cir. 1999). That conclusion is not at issue in this appeal.

religion, a government policy or action "'must significantly inhibit or constrain [religious] conduct or [religious] expression . . .; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.'" Patel v. U. S. Bureau of Prisons, 515 F.3d 807, 813 & n.7 (8th Cir. 2008) (quoting Murphy, 372 F.3d at 988). We alter this definition somewhat in the RLUIPA context, mindful that RLUIPA's broad protection of "religious exercise" extends even to religious practices that are not "compelled by, or central to" a certain belief system. Id. at 813 n.7; see Gladson, 551 F.3d at 832-33 (acknowledging that we apply the definition of substantial burden set forth in Murphy and as subsequently clarified by the Supreme Court in Cutter, 544 U.S. at 725 n.13, to "bar[] inquiry into whether a particular belief or practice is 'central' to a prisoner's religion").

a. The Succah: The officials argue that Sisney failed to make a sufficient threshold showing of a substantial burden because he submitted only his own conclusory statement as evidence. In response to the summary judgment motion, Sisney explained the religious significance of the succah (or tent), and he described it as being "a mandatory part of the Sukkot Festival" and essential to the practice of his Jewish faith.[7] (Appellants' App. at 807.) This assertion is not devoid of the necessary factual allegations–the succah is an expression of Sisney's faith during this religious festival and this expression of his faith is significantly inhibited, constrained, or altered by the denial of his request to use the succah during the Festival of Sukkot. Sisney provided some explanation of his faith and the religious exercise at issue. He did not rest on a conclusory allegation that his religious exercise was "substantially burdened,"

_____

[7]Sukkot is "a Jewish religious festival of thanksgiving celebrated originally as an autumn harvest festival that is commemorative of the temporary shelters of the Jews during their wandering in the wilderness." Webster's Third New International Dictionary 2287 (1986). It is also called the Feast of Booths and the Feast of Tabernacles. Id.

but there is evidence from which such a conclusion could be drawn. Whether Sisney can establish the truth or sincerity of this belief is a matter to be decided at trial, but we cannot say that his evidence is insufficient as a matter of law to withstand summary judgment. See Murphy, 372 F.3d at 988 (relying on the inmate's assertions to reverse a grant of summary judgment). The district court did not err as a matter of law by concluding that Sisney met his threshold burden with regard to the succah request. We lack jurisdiction to consider further issues on which the district court found material questions of fact.

b. Group Study Time: The prison officials argue that Sisney did not meet the threshold showing of a substantial burden on his religious exercise with regard to his request for additional weekly meeting time for Torah, Kabbala, and Hebrew language studies. The three-hour group worship and study time currently allotted resulted from Sisney's prior application for an additional 90 minutes each week to study the Torah. Now, Sisney asserts that the three hours currently provided is inadequate for group religious study because the time is consumed with Jewish worship services and Torah studies, leaving not enough time to study the Hebrew language. Sisney states that while Torah study is foremost and cannot be exchanged for the Hebrew study, his religion considers learning Hebrew to be a "mikvah," or "good deed." (Appellants' App. at 117.)

The prison must permit a reasonable opportunity for an inmate to engage in religious activities but need not provide unlimited opportunities. In Gladson, Wiccan inmates argued that a three-hour limitation on their celebration of a religious holiday substantially burdened their religious exercise under RLUIPA. 551 F.3d at 834. We held that the inmates "failed to offer any evidence" that three hours for their religious holiday celebration "significantly inhibits or constrains their conduct or expression; meaningfully curtails their ability to express adherence to their faith; or denies them reasonable opportunities to engage in those activities that are fundamental to their religion." Id. Additionally, we have held in the First Amendment context that, where

-22-

an inmate was permitted three hours of group worship time, the denial of one extra hour per week did not substantially burden the inmate's religious exercise: "three hours of group worship per week provided [the inmate] with a reasonable opportunity to exercise his religious freedom." Wier v. Nix, 114 F.3d 817, 821 (8th Cir. 1997). We do not demand doctrinal justification to support the desired religious exercise, but the inmate does bear the burden of establishing a *substantial* burden on a religious exercise. Gladson, 551 F.3d 833.

The record does not support a conclusion that Sisney's religious exercise of group study has been substantially burdened. He is permitted three hours of group study and worship time with other Jewish inmates and is additionally permitted to study the language and the religion individually in his cell. His explanation that the time is "inadequate" does not indicate how the denial of extra group study time significantly inhibits or curtails his religious expression or deprives him of a meaningful opportunity to engage in his religious activities. We do not question his assertion that learning to speak Hebrew is a "good deed" that will make his religious exercise more meaningful, but he has not asserted facts from which a juror could conclude that the denial of additional *group* time to study the language places a substantial burden on his religious exercise. The prison officials (Weber, Block, and Wagner) are therefore entitled to summary judgment on this claim.

c. The Tape Player: The prison officials denied Sisney's request to have and use a tape player in his cell for religious language studies. Although Sisney's religion deems it a "good deed" to speak Hebrew, he does not assert that the tape player itself is a religious item or that having one in his cell is the only way he can learn the language necessary to his religious conduct. The record indicates that Sisney has reasonable access to a tape player during the group meeting times (though he has no tapes) and that he is permitted to study the language in his cell with books. RLUIPA does not require the prison to permit an inmate to possess every tangential item of property that could aid the inmate's religious exercise or learning. Depriving Sisney

of a tape player in his cell does not significantly inhibit his religious expression, meaningfully curtail his ability to adhere to his faith, or deprive him of a reasonable opportunity to engage in that religious activity. Sisney has not set forth sufficient evidence to demonstrate that his religious exercise is substantially burdened by the denial of a tape player in his cell, and accordingly, the prison officials (Weber, Block and Wagner) are entitled to summary judgment on this claim.

## C. First Amendment Free Exercise

Where an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well. See Patel, 515 F.3d at 813. Thus, for the reasons stated above, the prison officials are also entitled to summary judgment on Sisney's official-capacity First Amendment claims for extra group study time and for a tape player in his cell.

As to the request for a succah, the district court appropriately considered this claim under the First Amendment standard set forth in Turner, 482 U.S. at 89-90, and found material questions of fact in dispute. For this reason, we lack jurisdiction in this interlocutory appeal to consider this issue further.

## D. Retaliation

Interim Warden Slykhuis and Cultural Activities Coordinator Wagner appeal the district court's denial of summary judgment and qualified immunity on Sisney's official-capacity and individual-capacity retaliation claims against them. We have held that conduct that retaliates against the exercise of a constitutionally protected right, such as access to the courts, is actionable even if the alleged retaliatory conduct does not itself rise to the level of a constitutional violation. Cody v. Weber, 256 F.3d 764, 771 (8th Cir. 2001). "The violation lies in the *intent* to impede access to the courts."

Id. (internal marks omitted). The district court concluded that genuine issues of material fact exist on Sisney's retaliation claims. Slykhuis and Wagner do not argue that Sisney's right against retaliation is not clearly established but that their conduct was reasonable and justified, or did not occur as Sisney alleges. On this, the district court found the existence of material questions of fact. These arguments present the type of factual disputes that "exceed[] our limited scope of review" because they generally concern "'which facts a party may, or may not, be able to prove at trial.'" See Powell, 405 F.3d at 655 (quoting Johnson, 515 U.S. at 313). Accordingly, we lack jurisdiction to consider them.

## III.

We reverse the district court's denial of summary judgment on the official-capacity RLUIPA claims for monetary damages of both Van Wyhe and Sisney based on our conclusions that RLUIPA is constitutional and that the prison officials are entitled to the protection of sovereign immunity from monetary damages. We also reverse the district court's denial of summary judgment on Sisney's injunctive relief claims for a tape player and extra group study time under RLUIPA and the First Amendment Free Exercise Clause. We remand for entry of judgment in favor of the prison officials on those claims and for further proceedings; we lack jurisdiction to consider in this appeal Sisney's claim for a succah and his retaliation claims due to the existence of genuine disputes of material fact.

_____

-25-