United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 95-4158

_____

Harlan L. Jacobsen,                    *
                                       *
          Plaintiff-Appellee,          *
                                       *
     v.                                *
                                       *
Richard Howard, Secretary of           *    Appeal from the United States
the State of South Dakota              *    District Court for the
Transportation, individually           *    District of South Dakota.
and in that capacity; Jeff             *
Holden, Director of South              *
Dakota Highway Safety and              *
Motor Vehicles, individually           *
and in that capacity,                  *
                                       *
          Defendants-Appellants.*

_____

Submitted:  June 12, 1996

Filed:  March 24, 1997

_____

Before LOKEN, JOHN R. GIBSON, and HANSEN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Richard Howard, Secretary of State of South Dakota Transportation, and Jeff Holden, Director of South Dakota Highway Safety and Motor Vehicles, appeal from the district court's[1] order declaring unconstitutional three South Dakota statutes, that prohibit newspaper vending machines at interstate rest areas, and enjoining Howard and Holden from enforcing the statutes against

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

Harlan L. Jacobsen, a newspaper publisher and distributor. Howard and Holden argue that the district court erred in concluding that the statutes were unconstitutional under the First Amendment overbreadth doctrine and as applied to Jacobsen. They contend that we should uphold the South Dakota statutes because they are not facially overbroad, are reasonable regulations by the state, and are only incidental regulations of speech not directed to the suppression of speech. Because we conclude that the statutes are unconstitutional as applied to Jacobsen, we need not consider the overbreadth question. We affirm the judgment of the district court.

Jacobsen publishes a newspaper, Solo RFD, for single adults, that he primarily distributes through vending machines. In July 1991 Jacobsen placed a newspaper vending machine at the Interstate 29 rest area near Vermillion, South Dakota. Several weeks later, an independent contractor for the South Dakota Department of Transportation removed the vending machine from the rest area and placed it in storage. Jacobsen sued Howard and Holden, individually and in their official capacities, seeking to enjoin the South Dakota officials from enforcing the state statutes under which the vending machine was removed and declaring the statutes unconstitutional. He also sued Holden and Howard under 42 U.S.C. § 1983 (1994), claiming that the removal of his vending machine from the rest area deprived him of his rights under the First and Fourteenth Amendments and constituted a seizure of property without due process.

Both parties moved for summary judgment. Howard and Holden argued that Congress delegated the authority to regulate vending machines at interstate rest areas to the states, 23 U.S.C. § 111(b)(1994), and that South Dakota could enact laws to prohibit the placement of all vending machines except soft drink vending machines operated for the benefit of visually impaired vendors. The district court rejected Howard and Holden's argument and

interpreted 23 U.S.C. § 111(b)[2] to be a delegating statute, granting states authority to permit the placement of vending machines in rest areas of the interstate system, but not authorizing any type of regulation concerning the vending machines. The court then held the three statutes in question[3]

---

[2]23 U.S.C. § 111(b) states:

**Vending machines.**-- Notwithstanding subsection (a), any State may permit the placement of vending machines in rest and recreation areas, and in safety rest areas, constructed or located on rights-of-way of the Interstate System in such State. Such vending machines may only dispense such food, drink, and other articles as the State highway department determines are appropriate and desirable. Such vending machines may only be operated by the State. In permitting the placement of vending machines, the State shall give priority to vending machines which are operated through the State licensing agency designated pursuant to section 2(a)(5) of the Act of June 20, 1936, commonly known as the "Randolph-Sheppard Act" (20 U.S.C. 107a(a)(5)). The costs of installation, operation, and maintenance of vending machines shall not be eligible for Federal assistance under this title. (Emphasis added).

[3]The South Dakota statutes are:

**31-8-16. Commercial establishment on right-of-way prohibited--Exception-- Violation as misdemeanor.** No automotive service station or other commercial establishment for serving motor vehicle users may be constructed or located within the right-of-way of, or on publicly owned or publicly leased land acquired or used for or in connection with a controlled-access highway. This section does not apply to a vending facility vending soft drinks only operated for the benefit of visually impaired vendors licensed by the division of service to the visually impaired. A violation of this section is a Class 2 misdemeanor.

S.D. Codified Laws § 31-8-16 (Michie Supp. 1996).

**31-29-83. Commercial activities in rest areas or information centers not permitted-- Exception.** Nothing in §§ 31-29-61 to 31-29-83, inclusive, authorizes the state or any political subdivision to operate or maintain, directly or indirectly, any commercial activity

facially

---

in any safety rest area or information center. This section does not apply to a vending facility vending soft drinks only operated for the benefit of visually impaired vendors licensed by the division of service to the visually impaired.

S. D. Codified Laws § 31-29-83 (Michie Supp. 1996).

**31-32-13. Business requiring use of highway by customers as misdemeanor-- Exceptions.** It is a Class 2 misdemeanor for any person to conduct an establishment or maintain a business the nature of which requires the use by patrons or customers of any part of the right-of-way of a state trunk highway while the patron or customer is receiving or discharging any merchandise or commodity at the place of business. This section does not apply to streets within the limits of municipalities which are under the control and regulation of the municipality. This section does not apply to a vending facility vending soft drinks only operated for the benefit of visually impaired vendors licensed by the Division of Service to the Visually Impaired.

S.D. Codified Laws § 31-32-13 (Michie Supp. 1996).

unconstitutional under the First Amendment overbreadth doctrine because the statutes "sweep within their ban on commercial use of interstate rest areas all newspaper vending machines . . . creat[ing] a virtual First Amendment Free Zone."

Alternatively, the district court held that the state statutes were unconstitutional as applied. Relying on <u>Sentinel Communications Co. v. Watts</u>, 936 F.2d 1189 (11th Cir. 1991), the court agreed that the rest areas were non-public fora and, as such, the regulations restricting First Amendment rights must only be reviewed for reasonableness. After examining the interests served by the statutes and the impact the statutes had on First Amendment activities, the court concluded that the statutes were unreasonable because they banned all commercial activities at interstate rest areas and unreasonably interfered with the constitutionally protected activity of newspaper distribution. The court reasoned

that distributing and reading of newspapers is compatible with the normal activities at interstate rest areas, and that the state's interests in meeting the safety, rest, and information needs of interstate travelers were not jeopardized by permitting the constitutionally protected activity of distributing newspapers at these areas. The court was influenced by the less restrictive regulations of other states, and the state's failure to show an effective alternative means of distribution or communication, especially considering the sparse population in most areas of South Dakota. After concluding that the statutes were also unconstitutional as applied, the court enjoined the state officers from enforcing the statutes. The court entered summary judgment in favor of Howard and Holden on Jacobsen's section 1983 claim, ruling that Jacobsen failed to allege any facts that would establish that Howard and Holden were directly involved in the action of the independent contractor who removed Jacobsen's vending machine and whom Jacobsen did not name as a party.[4] Howard and Holden appeal.

**I.**

Howard and Holden argue that the statutes are not facially overbroad, and Jacobsen must show that the statutes are unconstitutional as applied. Howard and Holden further attack the district court's alternative ruling that the statutes are unconstitutional as applied. We first consider the district court's ruling that the statutes are unconstitutional as applied.

Our First Amendment analysis depends on the type of forum being regulated. In a traditional public forum or a public forum by government designation, First Amendment restrictions are subject to strict scrutiny. Board of Airport Commissioners v. Jews for

---

[4]Jacobsen argues in his brief that he is entitled to monetary damages; however, he did not file a cross appeal from the district court's ruling to the contrary.

Jesus, 482 U.S. 569, 572-73 (1987). We uphold an exclusion of expressive activities if the regulation is necessary to serve a compelling state interest and the regulation is narrowly drawn to achieve that interest. Id. at 573 (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)); Cornelius v. NAACP, 473 U.S. 788, 800 (1985). A state may restrict access to a nonpublic forum, however, as long as the regulation is reasonable and not an effort to suppress expression merely because of opposition to a speaker's view. Jews for Jesus, 482 U.S. at 573 (citation and quotation omitted).

Howard and Holden contend that interstate safety rest areas are nonpublic fora, and are subject to the state's reasonable regulation. Jacobsen concedes that the rest areas are nonpublic fora, but he argues that access to these areas is critical if his newspapers are to survive. He urges us to declare that the sidewalks within the interstate rest areas are public fora, like other public streets and sidewalks.

The district court relied on Sentinel Communications in deciding that interstate rest areas, though resembling city parks, "are hardly the kind of public property that has 'by long tradition or by government fiat . . . been devoted to assembly and debate.'" 936 F.2d at 1203 (quoting Perry Educ. Ass'n, 460 U.S. at 45). Of course, a rule based entirely on "long tradition" might fail to adjust First Amendment protections to significant changes in the ways the public congregates, communicates, and travels. Moreover, from the standpoint of the government's need to limit free speech, interstate rest areas seem quite different from airport terminals, which were held to be nonpublic fora in International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 680-81 (1992). Nevertheless, because Jacobsen did not develop an adequate record on the issue, and because we find the statutes infirm under the less rigorous standard for nonpublic fora, we assume without deciding that the district court correctly decided that the

interstate rest areas are nonpublic fora, and we turn our attention to whether the South Dakota statutes are reasonable.

Howard and Holden argue that the district court analyzed the reasonableness of the statutes in a backwards fashion. They argue that the court erred because it first considered whether the newspaper vending machines were compatible with the purpose of the safety rest area, instead of examining the statutes alone to decide if the restrictions contained in the statutes were arguably reasonable. They stress that federal law disfavors vending machines in rest areas and prohibits those not operated directly or under contract with the state. See 23 U.S.C. § 111(b); 23 C.F.R. § 752.5(b)-(c) (1996).[5] They state that they are in a better position than the federal court to determine the reasonableness of the statutes.

We are persuaded that the district court correctly analyzed the South Dakota statutes. In considering the reasonableness of the statutes, the Supreme Court has uniformly directed us to consider the speech which is being restricted by the government regulation. For example, in City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750 (1988), the Supreme Court discussed a "hypothetical ordinance" prohibiting newsracks on public property. Id. at 763. Although the Court declined to decide whether a city could constitutionally prohibit the placement of newsracks on public property, id. at 762 n.7, the Court instructed that it would analyze an ordinance prohibiting all newsracks using the time,

---

[5]23 C.F.R. Section 752.5(b) provides:

The State may permit the placement of vending machines in existing or new safety rest areas located on the rights-of-way of the Interstate system for the purpose of dispensing such food, drink, or other articles as the State determines are appropriate and desirable. . . . Such vending machines shall be operated by the State. (Emphasis added).

place, and manner test. Id. at 763. The Court identified the risk necessitating the First Amendment inquiry as the government's silence or restraint of a channel of speech, and stated that the appropriate inquiry is "whether some interest unrelated to speech justifies this silence." Id. "[T]he question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." Id. (quoting Grayned v. City of Rockford, 408 U.S. 104, 116 (1972)). As explained by the Second Circuit:

> Public property . . . which is neither a traditional nor a designated public forum, can still serve as a forum for First Amendment expression if the expression is appropriate for the property and is not incompatible with the normal activity of a particular place at a particular time.

Gannett Satellite Info. Network, Inc. v. Metropolitan Transp. Auth., 745 F.2d 767, 773 (2d Cir. 1984) (citations and quotations omitted).

The Supreme Court used a similar inquiry in Perry Education Association, 460 U.S. at 50-51, instructing that a restriction on speech is "reasonable" when it is "consistent with the [state's] legitimate interest in preserving the property for the use to which it is lawfully dedicated."

The district court relied on Sentinel Communications when it stated that there is a constitutional right to distribute and circulate newspapers through the use of newsracks. 936 F.2d at 1196. The Eleventh Circuit relied on a number of cases in reaching this conclusion, including City of Lakewood, 486 U.S. at 768. Although several courts have indicated that a city may not completely ban newsracks from public property,[6] City of Lakewood

---

[6]See, e.g., Gold Coast Publications, Inc. v. Corrigan, 42 F.3d 1336, 1343-44 (11th Cir. 1994), cert. denied, 116 S. Ct. 337 (1995); Miami Herald Publ'g Co. v. City of Hallandale, 734 F.2d 666, 673 (11th Cir. 1984); Gannett Satellite Info. Network, Inc. v. Metropolitan Transp. Auth., 745 F.2d 767, 772 (2d Cir. 1984). See also International Caucus of Labor Comms. v. City of Montgomery, 87 F.3d 1275, 1278 (11th Cir. 1996) (upholding city policy banning tables from city sidewalks and distinguishing newsrack cases as precedent).

did not decide the question. 486 U.S. at 762 n. 7 ("we do not pass on [the dissent's] view that a city may constitutionally prohibit the placement of newsracks on public property").

In addition, there is, at least, a disagreement among members of the Supreme Court on whether a city may prohibit newsracks from public rights-of-way. Several justices have stated that the right to distribute newspapers does not include the right to distribute newspapers using newsracks. City of Lakewood, 486 U.S. at 778 (White, J., dissenting) (citing Breard v. Alexandria, 341 U.S. 622, 642 (1951)). Justice White specifically concluded that although a newspaper publisher may have the right to distribute newspapers, this right does not "encompass the right to take city property . . . and appropriate it for . . . exclusive use, on a semipermanent basis, by means of the erection of a newsbox." Id. at 778. See also City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 438, 445 (1993) (Rehnquist, C.J., dissenting) (stating that a city could order the removal of all newsracks from its public rights-of-way).

In Graff v. City of Chicago, 9 F.3d 1309 (7th Cir. 1993) (en banc), cert. denied, 114 S. Ct. 1837 (1994), the Seventh Circuit considered a challenge to a city ordinance governing the licensing of sidewalk newsstands. Id. at 1311. A plurality of five judges, distinguishing newsracks from newsstands, concluded that a newsstand on public property was not entitled to First Amendment protection. Id. at 1314-17. Seven other judges, however, disagreed. See id. at 1327-28 (Flaum, J., concurring, joined by Cudahy, J.) (writing separately to "emphasize my belief that the erection and maintenance of newspaper stands qualifies as conduct

commonly associated with expression . . . implicat[ing] the First Amendment's protection of expression"); id. at 1333-34 (Ripple, J., concurring, joined by Cudahy, J., and Rovner, J.) (finding "untenable" the plurality's position that the placement of a newsstand does not implicate expressive activity); id. at 1335 (Cummings, J., dissenting, joined by Bauer, J., and Fairchild, J.) (same).  Thus, although Graff considered a licensing scheme and not a ban on all newsracks, it reinforces our view that the state's prohibition is unreasonable and cannot square with the First Amendment.  Because the statutes here go far beyond merely prohibiting newspaper vending machines, we are not faced with deciding the First Amendment limitations on time, place, and manner regulation of newsracks and vending machines.  The three statutes prohibit all commercial distribution of newspapers.  The state has presented no credible explanation why the distribution of newspapers at an interstate rest area is incompatible with the state's interests in providing places of safety, rest, and information to interstate travelers.  In these circumstances, we are persuaded that the state may not legislate such a broad ban on First Amendment activity.  See Discovery Network, 507 U.S. at 430 ("Cincinnati has enacted a sweeping ban that bars from its sidewalks a whole class of constitutionally protected speech"); International Caucus of Labor Comms. v. City of Montgomery, 87 F.3d 1275, 1278 (11th Cir. 1996) (discussing significance of newsracks in public places).  We conclude that the statutes are unconstitutional insofar as they ban the distribution of newspapers at interstate rest areas.

     Howard and Holden's argument that Jacobsen did not have a contract with the state to distribute newspapers as required by 23 U.S.C. § 111(b) is unpersuasive, as the state statutes prohibit the state officials from entering into such a contract.  We have no hesitation in deciding that the distribution of newspapers at an interstate rest area is fully compatible with the state's interests in providing safety, rest, and information to interstate travelers.

We conclude that the state statutes are unreasonable, and affirm the district court's ruling that the statutes are unconstitutional as applied to Jacobsen.

## II.

Because we hold the statutes are unconstitutional as applied to Jacobsen, we need not decide whether the statutes are facially overbroad as held by the district court. However, we point out that the overbreadth doctrine is "strong medicine," Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973), used only if the overbreadth is "substantial," City of Houston v. Hill, 482 U.S. 451, 458-59 (1987). The overbreadth doctrine allows:

> an individual whose own speech or expressive conduct may validly be prohibited or sanctioned . . . to challenge a statute on its face because it also threatens others not before the court--those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.

Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503 (1985). "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Jews for Jesus, Inc., 482 U.S. at 574 (quoting City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 801 (1984)).

"It is not the usual judicial practice, . . . nor do we consider it generally desirable to proceed to an overbreadth issue unnecessarily--that is, before it is determined that the statute would be valid as applied." Board of Trustees v. Fox, 492 U.S. 469, 484-85 (1988). Permitting a facial challenge "would convert the use of the overbreadth doctrine from a necessary means of vindicating the plaintiff's own right not to be bound by a statute

that is unconstitutional into a means of mounting gratuitous wholesale attacks upon state and federal laws." Id. at 485. Because we conclude that the statutes are invalid as applied, it is appropriate that we not consider the overbreadth issue. See id. Similarly, the district court should have first considered the validity of the statutes as applied instead of reaching the overbreadth question in the first instance. Had the district court done so, it also would have found it unnecessary to consider the overbreadth issue. Accordingly, we must vacate that portion of the district court's opinion and judgment that holds the statutes overbroad.

## III.

Our conclusion that the statutes are unconstitutional undercuts Holden's and Howard's remaining argument that we should uphold the statutes under the incidental speech doctrine. "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376 (1968). We will uphold an incidental regulation of speech if the regulation:

> is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

Id. at 377.

Howard and Holden contend that the purpose behind the statutes is to prohibit all commercial activity at interstate rest areas, and this prohibition only incidentally regulates speech. The

statutes, however, ban the sale of newspapers.  In light of our discussion above, we cannot say that the statutes only incidentally regulate speech, or, on the state of this record, further the state's asserted interests.

We vacate the portion of the district court's opinion and judgment holding that the statutes are facially overbroad, and we affirm the remainder of the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-