# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 16-4313

———————————————

Charles E. Sisney

*Plaintiff - Appellee*

v.

Denny Kaemingk, in his official capacity as the South Dakota Secretary of Corrections; Darin Young, in his official capacity as the Warden of the South Dakota State Penitentiary; Sharon Reimann, in her official capacity as an SDSP designated Mailroom Officer; Craig Mousel, in his official capacity as an SDSP designated Property Officer

*Defendants - Appellants*

------------------------------

American Civil Liberties Union of South Dakota

*Amicus Curiae*

National Coalition Against Censorship

*Amicus on Behalf of Appellee(s)*

———————————————

No. 16-4480

———————————————

Charles E. Sisney

*Plaintiff - Appellant*

v.

Denny Kaemingk, in his official capacity as the South Dakota Secretary of Corrections; Darin Young, in his official capacity as the Warden of the South Dakota State Penitentiary; Sharon Reimann, in her official capacity as an SDSP designated Mailroom Officer; Craig Mousel, in his official capacity as an SDSP designated Property Officer

*Defendants - Appellees*

————————

Appeals from United States District Court
for the District of South Dakota - Sioux Falls

————————

Submitted: October 19, 2017
Filed: March 30, 2018

————————

Before GRUENDER and BENTON, Circuit Judges, and TUNHEIM,[1] District Judge.

————————

GRUENDER, Circuit Judge.

Inmate Charles Sisney brought this *pro se* civil rights action against four South Dakota corrections officials, asserting both facial and as-applied challenges to the State's prison-pornography policy. The district court construed Sisney's facial challenges to two distinct provisions of the policy as a single attack on the entire policy, and it granted his motion for summary judgment on this score. After invalidating the policy on its face, the court proceeded to resurrect a prior version of the policy and used it to resolve all but one of the as-applied challenges in Sisney's favor. The prison officials now appeal the partial grant of summary judgment to Sisney, and Sisney cross appeals. For several reasons, we find it prudent to decide

———————————

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

whether the policy was constitutional as applied to Sisney before reaching his facial challenges. However, the district court erred in its as-applied analysis, so we vacate the summary judgment order and remand for it to consider, in the first instance, Sisney's as-applied claims based on the version of the policy he actually challenged and then to determine whether facial relief remains necessary.

## I.

Sisney has been serving a life sentence at the South Dakota State Penitentiary ("SDSP") since 1997. During this time, he has brought several civil rights actions, including two *pro se* suits in South Dakota state court and a free-exercise challenge that was part of a consolidated appeal before this court. *See Sisney v. State*, 754 N.W.2d 639 (S.D. 2008); *Sisney v. Best Inc.*, 754 N.W.2d 804 (S.D. 2008); *Van Whye v. Reisch*, 581 F.3d 639 (8th Cir. 2009). With the benefit of this experience, Sisney now raises a variety of challenges to the 2014 version of the South Dakota Department of Correction ("SDDOC") pornography policy ("2014 Policy").[2]

In relevant part, the 2014 Policy "prohibits the purchase, possession and attempted possession and manufacturing of pornographic materials by offenders housed in [SDDOC] institutions." SDDOC, Policy No. 1.3.C.8, *Pornography* (2014). The term "pornographic material" is defined to include "books, articles, pamphlets, magazines, periodicals, or any other publications or materials that feature nudity or 'sexually-explicit' conduct . . . [as well as] photographs, drawings, etchings, paintings, or other graphic depictions of nudity or sexually explicit material." *Id.* "Nudity," in turn, is defined as "a pictorial or other graphic depiction where male or female genitalia, pubic area, buttocks or female breasts are exposed," while "sexually explicit" covers both images and writings that depict actual or simulated sexual acts. *Id.* Any material that qualifies as pornography under these definitions—including

---

[2]Sisney acted *pro se* throughout the proceedings before the district court, but counsel was appointed to represent him on appeal.

both incoming and outgoing correspondence—is treated as contraband and may be confiscated by prison staff. *Id.* Moreover, prisoners found in possession of pornography are subject to disciplinary action. *Id.* Inmates who disagree with a given classification, however, are entitled to appeal the decision through an administrative process. *Id.*

Acting pursuant to the 2014 Policy, SDSP staff rejected a number of items that were mailed to Sisney. The prohibited materials included two erotic novels, *Thrones of Desire* and *Pride and Prejudice: The Wild and Wanton Edition*, as well as four Japanese *manga* comics from a series called *Pretty Face*, nine images of Renaissance artworks depicting nudity, a book on Matisse and Picasso, and a poster featuring the iconic Coppertone suntan-girl advertisement. Sisney went through the prison grievance process to challenge the rejection of each of these items, but he was denied relief with only brief explanations as to why the materials were withheld.

In April 2015, having exhausted his administrative remedies, Sisney filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. His subsequent amended complaint included six claims: (1) a facial challenge to the policy "as it completely bans all sexually explicit material, both pictorial and written"; (2) a facial challenge to the policy "as it bans not only [Sisney] to receive sexually explicit communications, but also prohibits [him] from sending out sexually explicit communications to those in the general public"; (3) a due process claim not raised on appeal; (4) an as-applied challenge concerning the SDSP's "overly broad and exaggerated interpretations of pornography, nudity and sexually explicit material"; (5) an as-applied challenge to the rejection of the three books and four *Pretty Face* comics; and (6) an as-applied challenge to the rejection of the nine Renaissance images and the Coppertone poster. In his prayer for relief, Sisney requested declaratory relief as to the constitutionality of the ban on all "sexually explicit" material and the outgoing-mail regulation, declaratory relief concerning his as-applied challenges, injunctive relief requiring the SDDOC to prohibit only "traditional forms of pornography and obscene materials," and injunctive relief ordering the prison to allow him to receive the rejected items.

Following a limited period of discovery, the corrections officials moved for summary judgment as to all claims. Beyond contesting Sisney's asserted "constitutional right to receive sexually explicit communications," the officials cited a variety of district and circuit court opinions describing the general penological interests served by prison bans on sexually explicit materials, including institutional security, rehabilitation, and the prevention of sex crimes in prison, as well as a reduction in sexual harassment directed at staff. They then emphasized that the district court had found these same interests sufficient to uphold the 2000 version of the SDDOC pornography policy ("2000 Policy") in *King v. Dooley*, CIV. 00-4052 (D.S.D. June 16, 2003), suggesting that this decision was dispositive as to Sisney's "facial challenge" because the 2014 Policy is "essentially the same." The officials provided no explanation, however, for modifying the policy and never suggested that the general penological interests from the cases they cited actually motivated the adoption of the 2014 Policy. Shortly thereafter, Sisney countered with his own motion for summary judgment. In it, he noted that the SDDOC policy had undergone significant revision since it was upheld in *King*. For example, the 2014 Policy banned written sexually explicit materials, expanded the definition of nudity, and extended the policy to outgoing correspondence. Sisney argued that these and other changes rendered the 2014 Policy unconstitutionally overbroad, even considering the legitimate interests promoted by other prison pornography-censorship policies.

The district court referred the cross motions for summary judgment to a magistrate judge, who issued a thorough report and recommendation ("R&R") that found largely in favor of Sisney. First, the magistrate judge concluded that the 2014 Policy "is much more sweeping and comprehensive than its predecessor which was analyzed in *King*." Accordingly, the R&R rejected the defendants' claim that *King* was dispositive as to Sisney's "facial challenge"[3] to the 2014 Policy. The magistrate

---

[3]Apparently, the fact that the corrections officials construed Sisney's two facial-challenge counts as a single attack on the entire policy rather than more limited challenges to individual provisions led the magistrate judge, and ultimately the district

judge next considered the merits of the facial claims, evaluating the regulations on incoming mail under the Supreme Court's four-factor balancing test from *Turner v. Safley*, 482 U.S. 78 (1987), and the regulations on outgoing mail under the stricter test from *Procunier v. Martinez*, 416 U.S. 396 (1974). Based on these separate analyses, the R&R concluded that "the current [2014] policy must be declared facially invalid" in its entirety because the SDDOC provided no justification for the policy beyond emphasizing its similarity to the 2000 Policy upheld in *King*. Rather than concluding there, however, the magistrate judge proceeded to the as-applied challenges, offering no explanation for doing so beyond an unsupported assertion that the "DOC policy may be enforced insofar as it comports with the policy approved of in *King*." Thus, applying the superseded 2000 Policy, the magistrate judge recommended granting the defendants' motion for summary judgment as to the *Pretty Face* comics and the Coppertone poster, while granting Sisney's motion for summary judgment as to all of the other rejected materials.

Given the breadth of objections to the R&R, the district court reviewed the entire report *de novo*, ultimately adopting the recommendations and findings in nearly all respects. The court first observed that "[t]he basic claim of the Defendants is that the current policy really is no different than the [2000] policy . . . approved in *King*," and it agreed with the magistrate judge's rejection of this argument based on the "significant" differences between the two policies. The district court then held that the "new and overly broad policy goes far beyond what is necessary and is unconstitutional." With respect to the as-applied challenges, the court voiced concern about the R&R's unique approach of resurrecting and applying the 2000 Policy but seemingly accepted it nonetheless:

> [The R&R's] discussion of what is or is not censored under *King* is dicta and is only used to demonstrate some of the differences between the policies approved in *King* and the policies now before the Court. The R&R does not treat the *King* discussion as dicta. This Court does

court, to adopt the same approach.

-6-

consider the *King* discussions to be dicta because this Court does not believe that what there is of *King* policy in the present policy can be abstracted from the present policy to then apply those abstractions to the as-applied challenges. Nonetheless, this Court has applied the as-applied challenges under the *King* policy.

As we understand it, the district court applied the 2000 Policy despite its misgivings and found for Sisney as to each of the rejected materials except the *Pretty Face* comics. The prison officials then appealed the adverse grant of summary judgment, and Sisney cross-appealed the denial of relief as to the four comic books.

## II.

"We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party and giving the non-moving party the benefit of all reasonable inferences." *Murchison v. Rogers*, 779 F.3d 882, 886-87 (8th Cir. 2015). Summary judgment is proper if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). While a prisoner bringing a *pro se* action "is entitled to the benefit of a liberal construction of his pleadings . . . [Rule] 56 remains applicable." *See Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987) (per curiam).

As the Supreme Court instructed in *Turner*, prisoners' rights cases require courts to strike a balance between two competing principles. 482 U.S. at 84-85. "The first of these principles is that . . . [p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *id.* at 84, "including those of the First Amendment," *Beard v. Banks*, 548 U.S. 521, 528 (2006). At the same time, *Turner* acknowledged that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." 482 U.S. at 84. From a functional perspective, the Court noted, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of

government." *Id.* at 84-85. Thus, "separation of powers concerns counsel a policy of judicial restraint" when it comes to reviewing prison regulations. *Id.* at 85. Moreover, "[w]here a state penal system is involved," as it is here and was in *Turner*, federalism serves as an "additional reason to accord deference to the appropriate prison authorities." *See id.* In light of these dueling interests, the Court held that "a lesser standard of scrutiny is appropriate in determining the constitutionality of the prison rules." *Id.* at 81. Namely, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."[4] *Id.* at 89.

Like other parties, inmates are permitted to raise both as-applied and facial challenges. *See, e.g.*, *Thornburgh*, 490 U.S. at 403. In the First Amendment context, we recognize a unique species of facial challenge, "under which a law may be overturned as impermissibly overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (internal quotation marks omitted). Sisney's two facial claims both fall into the category of overbreadth challenges.

"It is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily—that is, before it is

---

[4]As the R&R correctly recognized, the same degree of deference does not extend to prison restrictions on outgoing mail, which are subject to review under the more exacting standard set out in *Martinez*. *See Turner*, 482 U.S. at 85, 87 (distinguishing between restrictions on incoming and outgoing mail and explaining that *Martinez*'s application of heightened scrutiny "turned on the fact that the challenged regulation caused a consequential restriction on the First and Fourteenth Amendment rights of those who are *not* prisoners." (internal quotation marks omitted)); *see also Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (providing an independent justification for this distinction because "[t]he implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials").

determined that the statute would be valid as applied." *Bd. of Tr. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484-85 (1989); *see also Wash. State Grange*, 552 U.S. at 450 (explaining that, even outside the First Amendment context, "[f]acial challenges are disfavored").  As the Supreme Court explained in *Board of Trustees v. Fox*,

> [s]uch a course would convert use of the overbreadth doctrine from a necessary means of vindicating the plaintiff's own right not to be bound by a statute that is unconstitutional into a means of mounting gratuitous wholesale attacks upon state and federal laws.  Moreover, the overbreadth question is ordinarily more difficult to resolve than the as-applied, since it requires determination whether the statute's overreach is *substantial*, not only as an absolute matter, but "judged in relation to the statute's plainly legitimate sweep," and therefore requires consideration of many more applications than those immediately before the court.  Thus, for reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first.

492 U.S. at 485 (citation omitted).  Indeed, the Supreme Court has long recognized that the resort to overbreadth doctrine "is, manifestly, strong medicine," and as such,"[i]t has been employed . . . sparingly and only as a last resort." *Broaderick v. Oklahoma*, 413 U.S. 601, 613 (1973).

Although *Fox* and its progeny do not *require* courts to resolve as-applied challenges before reaching claims of facial unconstitutionality, we conclude that several aspects of this case militate in favor of "resist[ing] the pulls to decide the constitutional issues . . . on a broader basis than the record before us imperatively requires." *See Street v. New York*, 394 U.S. 576, 581 (1969).  First, the *Fox* approach appropriately reflects the deference we owe to corrections officials in prisoners' rights cases.  As noted above, the need for restraint is only amplified here, given that both federalism and separation-of-powers concerns are implicated.  *See Turner*, 482 U.S. at 84-85.  Second and relatedly, beginning with Sisney's as-applied challenges could allow for the fashioning of more limited relief.  For starters, if Sisney were entitled to

as-applied relief, his claims might be redressed without reaching the overbreadth issue. *See Jacobsen v. Howard*, 109 F.3d 1268, 1274-75 (8th Cir. 1997) (admonishing that "the district court should have first considered the validity of the statutes as applied" because then it "would have found it unnecessary to consider the overbreadth issue"). Moreover, even if the as-applied analysis did not fully resolve the case, the *Fox* approach might facilitate the severing of constitutionally suspect provisions instead of invalidating the entire policy.[5] *See* Fallon, 99 Cal. L. Rev. at 955 ("[I]f the Court determines that a statute would otherwise be substantially overbroad under the First Amendment overbreadth test, it will normally sever the statute and hold it only partially invalid if . . . it can identify a particular, precise way of severing the statute that cures the defect of substantial overbreadth."). Third, as the Supreme Court has cautioned, "[c]laims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Wash. State Grange*, 552 U.S. at 450 (internal quotation marks omitted). Here, Sisney challenges the outgoing-mail provision on its face, but he does not allege that any of his own correspondence was censored under the regulation. Given the speculative nature of his challenge to this provision, we are reluctant to rush into a broad constitutional ruling without a better understanding of how the regulation is actually applied, especially if as-applied relief or a different construction of Sisney's complaint would render such a ruling unnecessary.

In *Jacobsen v. Howard*, another overbreadth appeal involving the grant of both as-applied and facial relief, we similarly resolved to begin our analysis with the as-

---

[5]That is, of course, assuming Sisney challenged the entire policy. As mentioned above, it is unclear to us that Sisney's amended complaint raised a facial challenge to the entire policy rather than separate facial challenges targeting the outgoing-mail provision and the definition of "sexually explicit." *See* Richard H. Fallon, Jr., *Fact and Fiction about Facial Challenges*, 99 Cal. L. Rev. 915, 925 (2011) (noting that "the Supreme Court routinely speaks of facial attacks on particular provisions . . . even when the success of those attacks could leave other aspects of multipart enactments [or rules] intact").

applied challenges. *See* 109 F.3d at 1271. Because we held that the challenged statutes in *Jacobsen* were unconstitutional as applied, we went on to vacate the separate finding of facial unconstitutionality as unnecessary and unwarranted. *Id.* at 1274-75. We have taken this approach in other cases, as well. *See, e.g.*, *Harmon v. City of Kansas City*, 197 F.3d 321, 328 (8th Cir. 1999).

Here, however, we cannot adopt the district court's as-applied analysis because it was error to resurrect and apply the 2000 Policy. This was not the policy that Sisney actually challenged, nor was it the authority under which SDSP staff withheld the rejected materials. In fact, once the district court facially invalidated the 2014 Policy, there was nothing left to apply, given that new SDDOC policies supercede rather than amend previous provisions in their entirety.[6] *See, e.g.*, SDDOC, Policy No. 1.3.C.8. Moreover, even if we could take this approach, it would be imprudent to do so. As the district court itself correctly concluded, "the differences [between the two policies] are significant," and further, the hypothetical application of the 2000 Policy is highly speculative in that it requires guessing what the prison would or would not have censured under the old policy.

In light of this error, we believe the best course is to vacate the summary judgment order in its entirety and allow the district court to reevaluate Sisney's as-applied claims based on the 2014 Policy—the version he actually challenged. *See, e.g.*, *Montin v. Estate of Johnson*, 636 F.3d 409, 416 (8th Cir. 2011) ("Out of prudence, we believe it is appropriate to allow the district court to address this issue in the first instance," particularly when a *pro se* plaintiff's filings before the district court "lacked clarity"); *see also Thornburgh*, 490 U.S. at 403-04, 419 (upholding a

---

[6]Although the district court suggested that it considered the R&R's "discussion of what is or is not censored under *King* [to be] dicta," it nonetheless evaluated Sisney's as-applied challenges under the superceded 2000 Policy. Even if there were some principled distinction between what the court said and did, however, we believe that conducting the as-applied analysis based on the 2014 Policy is a necessary first step in resolving this case.

-11-

challenged prison censorship scheme on its face and endorsing the appellate court's decision to remand for the district court to evaluate the as-applied challenges in the first instance). Only after this determination will the district court be able to decide whether and to what extent it is appropriate to consider Sisney's facial challenges, resolve the other issues identified above, and fashion appropriate relief.

## III.

Accordingly, we vacate the district court's summary judgment order and remand for further proceedings consistent with this opinion.

_____